IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CLARENCE JOHNSON,

                  Plaintiff,                      OPINION AND ORDER

      v.                                            06-CV-1248-BBC

UNITED STATES DEPARTMENT OF JUSTICE,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Clarence Johnson believes that he was wrongfully convicted of multiple drug offenses in 2004 and that defendant United States Department of Justice has evidence of this. Acting on his belief, plaintiff filed a request with defendant pursuant to the Freedom of Information Act, 5 U.S.C. § 552, seeking statements provided by Anthony Sharkey to the prosecutors in plaintiff's criminal trial. Sharkey had been named by the government as a witness, but was never called to testify. Plaintiff believes the reason is that Sharkey provided exculpatory statements that the government never turned over to the defense, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

Defendant did not conduct a search to determine whether it had records responsive to plaintiff's request. Instead, it concluded that because plaintiff was seeking a statement

1

of a "third party," even confirming or denying the existence of such a statement would be an "unwarranted invasion of privacy" within the meaning of 5 U.S.C. § 552(b)(7)(C), one of the exemptions to FOIA. After exhausting his administrative remedies, plaintiff filed this lawsuit in the Eastern District of Wisconsin, contending that defendant improperly invoked the (b)(7)(C) exemption.[1] Defendant's motion for summary judgment is now before the court.

I conclude that defendant erred in refusing to conduct a search for the records plaintiff requested. Such a refusal is appropriate under § 552(b)(7)(C) only when a third party's privacy would be implicated by the mere confirmation or denial of the existence of a record. Because it is already a matter of public record that the government was calling Sharkey as a witness, I cannot conclude that it would be an invasion of Sharkey's privacy to confirm that he did or did not provide the government with a statement.

It may well be that any statements Sharkey provided to the government fall into the § 552(b)(7)(C) exemption, but I cannot make that determination without some description from defendant about the contents of the statements, if they exist at all. Accordingly, I will stay a decision on defendant's motion for summary judgment to permit defendant to conduct a search and prepare an index of any records found, as discussed in <u>Vaughn v.</u>

---

[1] Because all of the judges and magistrate judges of the Eastern District have recused themselves from the action, this court has been designated to hear the case.

2

Rosen, 484 F.2d 820 (D.C. Cir. 1973). See also Solar Sources, Inc. v. United States, 142 F.3d 1033, 1037 n. 3 (7th Cir.1998).

From the parties' proposed findings of fact, I find the following facts to be undisputed. (Plaintiff disputes many of defendant's proposed findings of fact simply because they contain a typographical error regarding the number assigned to plaintiff's FOIA request. The mistake is noted, but it has no bearing on defendant's motion.)

UNDISPUTED FACTS

In 2003, the federal government charged plaintiff Clarence Johnson with several drug-related offenses. Several weeks before plaintiff's trial was scheduled to begin, the government filed a petition for a writ of habeas corpus ad testificandum for Anthony Sharkey. Sharkey never testified and plaintiff was found guilty of at least some of the charges.

In a document dated June 23, 2006, plaintiff submitted the following "Freedom of Information Act/Privacy Act Request" to defendant:

> Request for all, reports, statements, notes or summaries, writs ad testificandum recording and transcriptions of statements made by "Anthony Handy aka Shark[e]y" to attorneys for government or other government agents AUSA E. Blackwood and D. Sanders. In respect to investigation or prosecution of Clarence Johnson, case NO. 02 CR 144, before the Court of the Eastern District of Wisconsin, before [J]udge Charles N. Cl[e]vert Jr.

3

The following month, the acting assistant director of the Executive Office for United States Attorneys informed plaintiff in a letter that it had not performed a search for the requested documents because plaintiff was seeking information about "a third party." According to defendant, such information could not be released unless authorized by the third party or unless plaintiff offered "a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records."

In his appeal of the decision, plaintiff wrote:

> In case No. 02-CR-144, docket no. 726, states: on September 22, 2004, an application by AUSA Blackwood W/ORDER for a Writ of Habeas Corpus Ad testificandum for the appearance of Anthony Handy aka Sharkey on 10-11-04 at 8:30, and at a trial to begin 10-18-04 at 8:30, in room 222, in the matter as to Clarence Johnson. I am sure AUSA Blackwood as well as agents of the government interviewed "SHARKEY," and the statements were EXCULPATORY evidence, and suppressed by the government.
>
> Disclos[ure] to the defen[s]e would have changed the result of the proceeding . . . . This is a clear demonstration that the public interest in disclos[ure] outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records.

In a letter dated November 8, 2006, the director of the agency affirmed the decision "refusing to confirm or deny the existence of any records responsive to [plaintff's] request." The director stated that, "[w]ithout consent, proof of death, official acknowledgment of an investigation, or an overriding public interest, confirming or denying the existence of law

4

enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy."

OPINION

Under the Freedom of Information Act, "the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). (I note that both parties and especially defendant include significant discussions in their briefs regarding the Privacy Act, 5 U.S.C. § 552a. However, because I did not allow plaintiff to proceed on a claim under the Privacy Act and because FOIA overrides any exemptions to disclosure in the Privacy Act, 5 U.S.C. § 552a(b)(2), I have not considered the Privacy Act in this opinion.)

The "general philosophy" behind FOIA is one of full disclosure. United States Dept. of Justice v. Reporters Committee For Freedom of Press, 489 U.S. 749, 754 (1989). In practice, this means that all agency records are presumed to be public, that exceptions to the statute are narrowly construed, United States Dept. of Justice v. Landano, 508 U.S. 165, 181 (1993), and that the agency has the burden to show that its decision to deny release of the record falls within one of the statute's exceptions. United States Dept. of State v. Ray, 502 U.S. 164, 173 (1991). Further, the agency has this burden regardless whether the

reason for the request is lofty or selfish, to advance the public interest or to seek personal gain. National Archives and Records Administration v. Favish, 541 U.S. 157, 171-72 (2004) ("[W]hen documents are within FOIA's disclosure provisions, citizens should not be required to explain why they seek the information. A person requesting the information needs no preconceived idea of the uses the data might serve.")

In justifying its refusal to comply with plaintiff's document request, defendant relies solely on 5 U.S.C. § 552(b)(7)(C), which exempts from disclosure records "compiled for law enforcement purposes" if they "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Under this exemption, once the agency meets its burden to show that the requested documents are related to law enforcement and implicate a privacy interest, the burden shifts to the requester to show that "the public interest sought to be advanced is a significant one" and that "the information is likely to advance that interest." Favish, 541 U.S. at 172.

Because plaintiff seeks statements that, if they exist, were taken in preparation for a criminal prosecution, I agree with defendant that the statements would have been "compiled for law enforcement purposes." Center for National Securities Studies v. United States Dept. of Justice, 331 F.3d 918, 926 (D.C. Cir. 2003) ("To establish a law enforcement purpose, DOJ's declarations must establish (1) a rational nexus between the investigation and one of the agency's law enforcement duties; and (2) a connection between an individual

6

or incident and a possible security risk or violation of federal law.") (internal quotations omitted). A more difficult question is whether the statements "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

The immediate problem presented in resolving this question is that the content of any statements responsive to plaintiff's request is unknown to both the court and the parties. Defendant refused not only to produce documents responsive to plaintiff's request, but even to look for them. This is what is commonly referred to in the case law as a "Glomar response," a term derived from Phillippi v. Central Intelligence Agency, 546 F.2d 1009, 1014-15 (D.C. Cir. 1976), a case in which the CIA refused to confirm or deny existence of a then-secret vessel, the Hughes Glomar Explorer. E.g., Bassiouni v. C.I.A. 392 F.3d 244, 246 (7th Cir. 2004) ("Every appellate court to address the issue has held that the FOIA permits the CIA to make a 'Glomar response' when it fears that inferences from Vaughn indexes or selective disclosure could reveal classified sources or methods of obtaining foreign intelligence.")

In this case a Glomar response would be appropriate only if defendant could show that § 552(b)(7)(C) would be violated simply by acknowledging the existence of statements Sharkey may have made about plaintiff's criminal trial. Minier v. Central Intelligence Agency, 88 F.3d 796, 800 (9th Cir. 1996); Nation Magazine v. United States Customs Services, 71 F.3d 885, 893 (D.C. Cir. 1995). But defendant does not even attempt to make

7

this showing and I cannot conclude that defendant's refusal to conduct a search is required by § 552(b)(7)(C).

It is true that courts have rejected efforts by litigants suing under FOIA to obtain information about witnesses in criminal investigations on the grounds that even disclosing the mere fact of an individual's involvement could subject the witness "to threats of reprisal" or "the stigma of being associated with a criminal or federal investigation." McErlean v. United States Dept. of Justice, No. 97 CIV. 7831(BSJ), 1999 WL 791680, *9 (S.D.N.Y. Sept. 30, 1999) (citing cases). But these are cases in which the plaintiff is simply going on a fishing expedition to learn information about unknown witnesses who may have participated in an investigation. When an individual's involvement in a criminal investigation is currently undisclosed, it is reasonable to conclude that information revealing that involvement could implicate an interest in privacy.

In this case, it is already public knowledge that Sharkey was a government witness. It could hardly come as a surprise that he gave a statement somewhere along the way. In fact, it would be unlikely that the government would file a petition for a writ of habeas corpus ad testificandum for Sharkey without first taking a statement from him. Accordingly, I conclude that acknowledging the existence of a statement by Sharkey would not invade his personal privacy under § 552(b)(7)(C). Cf. Boyd v. Criminal Division of United States Dept. of Justice, 475 F.3d 381, 388-89 (D.C. Cir. 2007) (in FOIA case in which defendant claims

8

"confidential informant" exemption, Glomar response not sufficient when informant's status has been confirmed); Nation Magazine, 71 F.3d at 896 (D.C. Cir. 1995) (redaction of witness's name not required by § 552(b)(7)(C) when witness had "made several public statements" regarding same subject matter as those in requested records); Meserve v. United States Dept. of Justice, Civil Action No. 04-1844 (RBW), 2006 WL 2366427, *6 (D.D.C. Aug. 14, 2006) (noting that agency withdrew objection to withholding documents under § 552(b)(7)(C) once plaintiff established that witness's participation in investigation was public knowledge). It was error for defendant to refuse to conduct a search.

This error would be harmless if I agreed with defendant that a search could not uncover any nonexempt records. Defendant says in its brief that "the release of . . . information about a third party(s) could subject such persons to an unwarranted invasion of their personal privacy, could result in unwanted efforts to gain further access to such persons or to their personal information, could cause them harm, or exposure to unwanted an[d]/or derogatory publicity and inferences." Dfts.' Br., dkt. #9, at 8. In other words, defendant's argument appears to be that it was unnecessary to conduct a search for the requested records because witness statements are categorically exempt from disclosure under § 552(b)(7)(C).

The Supreme Court and other courts have held that categorical exemptions are permissible in some circumstances. As a general matter, "categorical decisions may be

9

appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction." Reporters Committee, 489 U.S. at 776. For example, in NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214 (1978), the Court held that it was appropriate for the NLRB to conclude categorically that releasing witness statements before the conclusion of a proceeding "could reasonably be expected to interfere with enforcement proceedings" under the exemption in § 552(b)(7)(A). The release of such statements "necessarily would involve the kind of harm that Congress believed would constitute an 'interference' with NLRB enforcement proceedings—that of giving a party litigant earlier and greater access to the NLRB's case than he would otherwise have." Id. at 241. And in Reporters Committee, 489 U.S. at 752, the Court held that rap sheets always implicate personal privacy because they "contain certain descriptive information, such as date of birth and physical characteristics, as well as a history of arrests, charges, convictions, and incarcerations of the subject."

However, the Court has also admonished agencies not to make "sweeping presumption[s]" that do not "compor[t] with common sense and probability." United States Dept. of Justice v. Landano, 508 U.S. 165, 175 (1993). In Landano, the plaintiff was also a prisoner and, like plaintiff, seeking to obtain information that he believed had been withheld during his trial in violation of Brady. The Department of Justice refused to provide any information from its files, invoking the "confidential informant" exemption under §

10

552(b)(7)(D) and arguing that the exemption applied in every case in which an informant provides information to the FBI in the course of a criminal investigation. Although the Court agreed with the department that "confidentiality often will be important to the FBI's investigative efforts" and assumed that "most . . . individual sources will expect confidentiality," it held that it was "not reasonable to infer that the information is given with an implied understanding of confidentiality in all cases." Landano, 508 U.S. at 176. In Favish, 541 U.S. at 167, a case in which the Court held that it was appropriate to withhold under § 552(b)(7)(C) photographs of a dead body taken as part of a criminal investigation, the Court considered the propriety of the exemption under the particular facts of the case, relying on affidavits submitted by the deceased's family members in which they described the effect that disclosure was likely to have.

In a case like this one, in which the plaintiff is already aware of both the witness's identity and his involvement in the criminal case, I cannot conclude that it would be reasonable to presume that revealing the content of a witness statement would be an invasion of the witness's privacy. After all, plaintiff is seeking statements about *himself*; he is not trying to find out any "intimate details" about the witness. Reporters Committee, 489 U.S. at 763-64 (defining privacy to mean "individual's control of information concerning *his or her person*") (emphasis added). See also Oguaju v. United States, 288 F.3d 448, 449 (D.C. Cir. 2002) (in FOIA case brought by convicted prisoner, finding that § 552(b)(7)(C)

11

permitted withholding of files that Marshals Service held containing details about government informant).

It is certainly possible that statements provided by a witness could include personal information about that witness. Even if the statement is about plaintiff and not about the witness, it could include information, such as the witness's opinion of plaintiff, that would intrude on the witness's personal thoughts and feelings. If that is true in this case, defendant can explain why the documents cannot be turned over to plaintiff even if they are redacted. 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt.")

Accordingly, I will stay a decision on defendant's motion for summary judgment to allow defendant to conduct a record search that is "reasonably calculated to uncover all relevant documents." Weisberg v. United States Dept. of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983). Defendant may have until December 3, 2007 to conduct the search and report the results of its search to the court and plaintiff. Regardless whether defendant uncovers any responsive records, it must submit affidavits that explain in reasonable detail and in a nonconclusory fashion the scope and method of its search. Perry v. Block, 684 F.2d 121, 126 (D.C. Cir. 1982). If defendant does uncover responsive records, it must file and serve an index of those records, as explained in Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). Defendant may submit supplemental briefing at that time, if it wishes to do so.

Plaintiff may have until December 13, 2007, to file a response. Because it is likely that the case can be resolved in favor of plaintiff or defendant on summary judgment, I will vacate the December 26, 2007 trial date. In the unlikely event that triable issues remain after resolution of defendant's motion for summary judgment, I will schedule a new trial date at that time.

ORDER

IT IS ORDERED that

1. A decision on the motion for summary judgment filed by defendant United States Department of Justice is STAYED.

2. Defendant may have until December 3, 2007, to conduct a search for the records requested by plaintiff Clarence Johnson and to report the results of the search to plaintiff and this court. If defendant discovers responsive records, it must file and serve a <u>Vaughn</u> index summarizing its findings. Regardless whether defendant uncovers any responsive records, it must submit affidavits that explain the scope and method of its search. In addition, defendant may file any supplemental briefing it wishes to file at that time.

3. Plaintiff may have until December 13, 2007 to file a response to defendant's submissions.

4. The December 26, 2007 trial date is VACATED.

Entered this \_\_\_\_2d\_\_\_\_ day of November, 2007.

BY THE COURT:

*Barbara B. Crabb*
BARBARA B. CRABB
District Judge

14